Good morning, your honors. Laura Moody for the state of Michigan. I'd like to reserve three minutes for rebuttal. That is fine. You may proceed. Well, this case is significant to the state and particularly significant to the victims. The question in this case is really relatively simple, straightforward. Was the Michigan Court of Appeals so unreasonable when it denied petitioner habeas relief that it's deserving, that petitioner's deserving of the extraordinary remedy of habeas relief reserved really only for the most egregious cases? This court's very familiar, I know, with the extremely high level of deference given to the state courts in habeas cases, so I won't go over it here. But given that deference and the high standard for granting habeas relief, the answer to that relatively simple question is no. The Michigan Court of Appeals was not so unreasonable when it granted habeas relief that petitioner's deserving of it. The district court granted habeas relief as this court knows after finding ineffective assistance of counsel under Strickland. Strickland, of course, requires two showings, deficiency and prejudice. That is a reasonable probability that the outcome of the trial would have been different. Are you saying that here the standard that we should use, what standard would you have us review whether or not Mr. Moss's convictions relating to M&K should be vacated? Because I know you said that the district court judge did not use the correct standard, and you said he didn't use the Strickland standard, correct? Well, I think the district court said both Strickland and AEDPA, and while he applied Strickland, he did not appropriately apply AEDPA. In other words, I think in our court here today is to give AEDPA the teeth that it is supposed to have. The Supreme Court has made it clear on many, many occasions that cases that are deserving of habeas relief are extremely rare, and they are reserved only for egregious cases in which the criminal justice process has had an extreme malfunction. This is not one of those cases. In fact, because it's Strickland, the Supreme Court has said because of the inherent deference that's in the Strickland standard itself, even if you were to review a direct appeal case, the standards in Strickland are so deferential that when you put the overlay of AEDPA, it is a doubly deferential standard, and so it's in that context and that lens that the state asks that you review this claim of ineffective assistance of counsel. Do we have, I guess, two standards to review here in terms of the decision of the Michigan Court of Appeals? One as to whether there's deficient performance, and another as to whether there was prejudice. Because as I recall, on the deficient performance aspect of it, the state court did not make a finding, and so review there would be de novo, I believe. And then as to prejudice, it would be under the familiar AEDPA deferential standards. So the district court granted on two different claims. One on the failure to interview and the inconsistencies between her testimony and the police report. So with respect to the inconsistencies, the Court of Appeals addressed both prejudice and deficiency. I think, Claire, although it was more expressed in terms of its addressing prejudice on the inconsistency Strickland claim, but it did address both, I believe, in that claim. With respect to the failure to call and interview Novella Alliston, it expressly decided prejudice, but because defense counsel, like the state court did, had no recollection of whether he had read and made a determination as to whether or not to call her, the state trial court nor the Michigan Court of Appeals addressed the deficiency prong. And under Rayner, this court's precedent, and Rompilla, if the court only addresses one prong, then yes, that prejudice prong receives AEDPA deference, the deficiency prong does not. So turning to that one prong as to the grandmother. Can I make a note? I'm sorry, Chair. Oh, no, go ahead. Sure. A note in our brief, I think we presented an argument that there is some new Supreme Court precedent that may be undermining that, and I just want to make a note of that so I don't waive that argument if somebody wants to make that. But yes, under Rompilla and under Rayner, you are correct, Chief Judge Pohl, that there is a difference in the review between the deficient performance and the prejudice performance. So why don't you address this issue involving the grandmother? Okay. The district court, if I can address prejudice and then I can address deficient performance, or if you have questions, I can, but I'd like to, because time is limited and I think that's where the meat is, I'd like to address the prejudice prong. First, the district court I think was wrong when it concluded, contrary to the state court, that petitioner was prejudiced. Here's why. First, evidence that Michelle lied about the sexual assault was already in through two different people. One, through her mother, and two, through the jury. You don't know what's more powerful than your mother saying you lied to her and then you yourself admitting under oath to the jury that you lied about the sexual assault. Alliston's testimony, while it would have perhaps been a corroborating third person that would have said she lied about the sexual assault, had significant baggage. That's clear from the police report itself. And while he did not interview her, that would have come in. No matter what she said, that would have been used to impeach her. And so she came with baggage. She was obviously hostile to her granddaughter. She talked in very vulgar terms about her granddaughter, which I don't want to repeat here, but the comment about her being a dog and her being dropped off at early morning hours at like a piece of meat, the sarcasm about her crying and putting her head on her lap, those are things that are very, very hostile. And not only would that have made Alliston look bad, it could have evoked sympathy for this young woman who obviously has significant dysfunction in her family and then you have this grandmother out there testifying in very vulgar terms and hostile terms about her own granddaughter. Alliston also testified at the evidentiary hearing to a... But on the prong, I think we're on the prong about whether he had gotten in touch with and worked with the grandmother. We don't really even get to the issue that you're raising if he failed to investigate. Isn't the law clear for adequate counsel that if you fail, if you make a choice but you don't investigate to give yourself any factual basis upon which to make that choice not to call, then you have failed to satisfy Strickland's requirement to provide proper counsel? And I'm sorry Judge Stranst, if I wasn't clear. No, this is all in the context of the prejudice problem. Although these facts about her being able to be impeached and hostile in the police report all could play into whether or not it was a reasonable determination not to even interview or call here. But yes, I mean obviously those facts play for both ways, but this discussion is about the prejudice problem. We can come back to this when we get back to the deficiency. But yes, the fact that she could be significantly impeached both play a role in whether or not she suffered prejudice for not having called her, and also whether or not it would have been reasonable not to go and talk to her and call her at trial. Perhaps most importantly, the fact that at the time of trial, Tammy, her mother, was no longer with Petitioner and they were in a serious custody dispute plays heavily against the trial court, or that Alliston's testimony would have been much more credible than Tammy. If you remember, the district court stated that one of the reasons he was finding prejudice was because Tammy was Petitioner's girlfriend. Now that was not true at the time of trial. In fact, it came out at trial. They were in a serious custody dispute. There was no reason for Tammy to lie and she had not exhibited that kind of hostility and did not come with the baggage that Alliston came with. And so we have this kind of unbiased testimony of Tammy and Michelle herself testifying that she lied. The district, all of which goes to whether or not having put Alliston on the stand would have created a reasonable probability that a different outcome would have resulted. The district court was also wrong when it characterized the evidence as weak. In playing, it is a factor in why Alliston would have kind of put defendant over the top, so to speak. The evidence was not weak. It's not a case of he says, she says, she says. The victim's stories were consistent in significant respects in what he wanted to see, what he wanted them to do, how he approached them, his playful kind of manner at times. The victim's stories were consistent with the undisputed evidence about what took place in the household. He was sporadically working. The mom was gone. He had access to the girls. There were times when this could have been accomplished. It's not a case in which defendant didn't have access or limited access. He had unlimited access to these young women. The district court depended a lot on the fact that there was no medical evidence, which is curious given that this was a breast touching case, given that this was a young woman who was sexually active apart from the sexual assaults that petitioner perpetrated on her. There would be no physical evidence, not to mention there was a delayed disclosure over a period of time. There would have been no medical evidence at the time it was reported. And the district court relied in large part on the fact that there was a delayed disclosure, which is curious to me in this day and age. We know that victims, it's very common and in fact not just common, typical, that victims disclose late, partly because they don't do so until they reach a place of safety, which is exactly what happened in this case. There was almost immediate disclosure when these young women reached a place of safety. And in particular, a minor is very reluctant to disclose sexual abuse in a home in which she is under the authority of the abuser. And when the mother has a relationship with the abuser. So the district court relied on factors to show that the evidence were weak that are simply wrong. And that is, even if that were on de novo. But this is an AEDPA case and this is the prejudice prong and it's entitled to AEDPA and the Michigan Court of Appeals found that there was no prejudice. I'd like to move on to the ineffective assistance of counsel claim with respect to the two consistencies. Judge Strange, but I know you wanted to address. Fairly. What you want to say fairly is if I win on prejudice, I win. Deficient performance doesn't matter. That's right. But I'm happy to address deficient performance if you'd like. I think we know the law on failure to investigate, it's deficient. So I have just a minute left and I'd like to address quickly the ineffective assistance of counsel claim regarding the two inconsistencies. One relating to her reporting the abuse to the police and the one relating to the age of the abuse, which was frankly both of them so inconsistent. The age at trial, she said, was 17 and the police reported it was 16. It's an insignificant difference given the fact that it was a delayed disclosure in the time of trial. It was a year or two later. The reporting to police, she could have voluntarily reported it when they asked her after her boyfriend reported. It's not clear that it was even inconsistent, but if it was, it was insignificant. And certainly insignificant in light of the very significant impeachment that she underwent at trial. I think this is really the most important part in the district court overlook list. Michelle was impeached on the fact that she was an alcoholic, that she had repeated blackouts, that she failed to disclose a conversation to police about whether he had apologized and promised he would not sexually assault her again. Impeached with the fact that she out in Tennessee lied to her mother about the sex being consensual. She was impeached with her delayed disclosure. She impeached with some of the household facts that she talked about with people coming and going. Many, many more, but the point is despite all of this significant impeachment, the jury saw her, looked at her face, listened to her testimony and believed her because they, one, because that's the province of the jury to look at the person testifying to determine if they believe her, and two, because it was consistent with crystals and I think consistent with the household and the evidence about the household. But the district court here substituted its judgment for that of the jury and didn't find her credible. That's not the province of the appellate court, certainly not the province of the habeas court. And even worse, it disregarded the high standard set for that. This claim that we just talked about is deserving of AEDPA prejudice or AEDPA deference on both prejudice and deficiency. This is not an extreme malfunction of the criminal justice process and I'm out of time, so I ask the district court to reverse the district court's decision. Okay, thank you, Ms. Moody. Good morning, ma'am. Good morning, Mr. Court. I'm Bruce LaPierre, Mr. Walsh, Mr. Aldrich, and I represent Mr. Moss and Daniel Aldrich, who is a third year student at Washington University Law School, will argue today. Okay, thank you. Good morning, Mr. Aldrich. Good morning. May it please the court. At trial, the prosecution relied solely on the testimony of the alleged victims, M and K. Moss's defense counsel, David Goldstein, was provided with a police report containing an interview with Novella Alliston. In the interview, Alliston stated that she would have testified that M had recanted her allegations against Moss, but Goldstein did not call Alliston to the stand. He did not investigate her. He did not even get in contact with her. Had he done so, he would have found out that Alliston was prepared to testify to not just one, but two instances on which M had recanted her testimony. Had the jury heard this testimony, there is a reasonable probability that, in the words of Wiggins, at least one juror would have struck a different balance. Well, why is that the case, given my understanding that M's mother and M also indicated there was this recantation? So this testimony from the grandmother would have been cumulative. The jury heard the essence of that testimony twice, from I think it was Tansey and then from M. Your Honor, first of all, I would not characterize Alliston's testimony had it been heard as cumulative. That would be more appropriate if she was testifying about the same instance of recantation. In other words, if she had been there when M had recanted to Tansey. But in fact, she would have been testifying to two additional instances of the recantation. And furthermore, she had two advantages as a witness that Tansey lacked. First of all, she did have, unlike Tansey, she had no personal relationship with Moss. So although it's true that by the time of the trial, they were no longer together, although I believe the record reflects that the custody dispute at the time of the trial had concluded. It is true that Tansey did have a personal relationship with Moss. Allison had no relationship, so there would be no chance of bias there. And also, on the stand, M went back on her recantation to Tansey. So in other words, she recanted to Tansey and then later she said that she had lied about that recantation in order to get her mother's love. So in those respects, Alliston's testimony would not have been cumulative. What about the state's argument, the warden's argument that with Alliston would come a great deal of baggage in terms of her relationship with her granddaughter, the way she referred to her granddaughter in very negative terms, things of that nature. And that maybe it's a wise strategic choice not to call Alliston because all this other stuff would come out that would be harmful. So the hostility argument does go to both prejudice and deficiency. On the prejudice point, I would say first of all, there's plenty of stuff in the police report that indicated that Alliston would have been a strong witness. She was a 65-year-old grandmother of both the victims. She's worked at the University of Michigan Hospital for 24 years. And furthermore, it's not clear on the basis of the police report that had she been on the stand, her credibility really would have been diminished because of this relationship with M. She says that she hated to see it in reference to M's drug abuse and drinking. So it could just as easily be the case that the jury would find her sympathetic and concerned for her granddaughter as opposed to hostile. But since you say that it could have been one or the other, doesn't that cut against your argument that the failure to call her was prejudicial? Because you just said that it could have been viewed by the jury this way or it could have been used that way. And if that's the case, I don't know how that constitutes prejudice. So, Your Honor, the prejudice standard in Strickland is whether there's a reasonable probability that but for counsel's unprofessional errors, the result would have been different. And in Strickland, the court defined reasonable probability as a probability sufficient to undermine confidence in the outcome. So it doesn't have to be more likely than not, just more than a possibility, basically. So I think it's a wash, basically, that the jury could have discounted her testimony on the basis of hostility or could have also found it sympathetic. A wash doesn't get you there, does it? And I don't want to belabor that, but I am just I would just like to say, I think a wash does get me there because if she was put on the stand, my contention is, at the very least, it's halfway likely that they would believe her. And we don't need halfway. We only need a reasonable probability. Here's the problem, though, with your argument. It's not just whether they would believe the grandmother or not. It's what other information they would take about the victim and believe about the victim. The concern for a counsel choosing whether to put the grandmother on the stand would be that the things that she would say about her granddaughter wouldn't reflect on her. They would reflect on the granddaughter and make the granddaughter's believable to the jury, which is the last thing counsel would need to have done in this case. Isn't that the problem with the analysis for you, for your side? Sorry, could you clarify? When the grandmother testifies, there are two credibility issues that arise. First of all, her own credibility. Is this grandmother telling the truth? Is she just saying things to protect the granddaughter? Do we think that her second, not alibi, but second confirmation or corroboration would make a difference to this jury? That's an important consideration. Equally, and in my mind perhaps more important, is what will she say about her granddaughter that will make the jury see her granddaughter in a different light? If she comes in and says some of the things that were in her statement to the police about her granddaughter, the danger is, and the consideration for prejudice is, that the jury might then say, this is what her grandmother thinks of her? I don't know that I'm going to believe what M testifies to. Because this is a close relative who says she loves her and she's portraying her as being a type of person that might have engaged consensually with her mother's boyfriend. That would be devastating to her case. So doesn't that weigh strongly against putting Alliston on the stand? I'm afraid I still don't understand the logic there. Because to me that means that it would be a positive for the defense if it turned out that the jury, on the basis of Alliston's testimony, lost credibility with M, right? No, not lost. If what's going on on the stand affects all of the credibility in the case, don't you think that makes a difference? Maybe we're not on the same stand. My understanding of what you just said is, if we have the grandmother on the stand saying all these things about M, the jury might think what about M? What I'm saying is there are two credibility questions and I'm struggling with whether your credibility question wins in this and makes a wash. I may not have said it as clearly as I should. Whether your credibility question makes a wash of this or whether the credibility of the grandmother's statements don't work against you. Yes. Perhaps not the best question. Because what I heard, and I think what you're struggling with, is you're saying that if Judge Stranch's articulation of what might have happened, that is that the grandmother gets up and says, you know, the daughter is, you know, maybe is the kind of person who might have done these things consensually. You're saying okay about the defense, because that undermines the grandmother's testimony, but it also undermines M's credibility. So you're saying you're not worried about that, and that supports your argument. I think that's exactly what I'm saying. Right. Because you want the jury to see M as being untruthful and, you know, lax or whatever. I don't want to get into that. Yes, I think that's exactly correct. So you're basically disagreeing with what she's saying. And you don't have to comment on that. And you would say that's what I heard. There's a wash on that. And that that's good enough for your testimony, for your defense. That's a fair response. Okay, and I would make one more point about the language in the police report. If you look at the police report with Tansy, who is M's mother, K's aunt. She says similarly hostile things towards M. She refers to her as a damn liar, as a mess. So it's not as if, you know, and clearly Moss's counsel did not see a problem with putting Tansy on the stand, despite this language in the police report. So I would say that. So the consensual issue, you think, just goes away. That just makes, it is best for your client and would have been something that would have made the jury think, well, this is, this is not a good thing. This is, we've got to, we've got to find not guilty, right? You're saying that. Yes, I think that the likely result of Allison's testimony would be, we have not just Tansy's recantation, but now we have two separate Allison recantations. Both saying that M came to her and said, I lied about my allegations against Moss. When the case depends solely on M and K's credibility, and you have one witness who now has recanted not once, but three times, I think that does go to the heart of the prejudice question. I think there's a reasonable probability the jury would say, okay, now we have not just one, we have three recantations. This is from the victim's grandmother, who's 65 years old, does not have a personal relationship with Moss. I think there's a reasonable probability at least one juror would have struck a different balance. So I haven't spoken directly to the deficiency prong. Essentially, Strickland says counsel has a duty to make reasonable investigations or make a reasonable decision that particular investigations are unnecessary. And I think it's clear here that counsel did not make a reasonable decision not to investigate Allison. He says that he must have seen the police report. So the opposing counsel's argument is that he saw the police report and then decided there's enough problems perhaps with her testimony that I'm not going to call her. Yeah, but you know, and couldn't that be sufficient from a strategic standpoint? I mean, if counsel looks at the police report and he sees all of this, you know, potential baggage lurking there, from a strategic standpoint, there would be nothing to require him to go and talk to the grandmother to confirm that all this baggage exists, if he could reasonably glean that from the police report. And if, I mean, couldn't that suffice? I mean, are you saying that there has to be that next step of counsel going out and talking to the grandmother to just confirm that what's in the police, what she said in the police report, is actually what she would say a call to the stand? You know, there does have to be that next step, because this court held in Townsville Smith that to its counsel is ill-equipped to determine a witness's perspective. It's wasting this credibility without at least going to talk to that witness. So just on the basis of a police report that says, you know, gives some indication of what the substance of the testimony might be, is not enough information to make. But even if that substance in the report, first of all, appears cumulative, appears to be potentially prejudicial to, I mean, the victim in that it would cast her in a bad light. Are you saying that based on our precedent, there can never be a strategic decision made without going out and talking to every impacted witness? Not when the testimony would depend on how a jury might view her credibility. So I think that's the essential question here. The jury would want to determine whether I believe Allison or whether I believe Em. And counsel could not have made a reasoned decision that if you put Allison on the stand, the jury would not believe her without, you know, just by looking at the police report without at least going to talk to her. But now remember, one of the other things I put in there was to the cumulative prong. And I know your argument is that it wouldn't have been cumulative because it related to some different things. But assuming that, you know, hypothetically that the counsel viewed that as cumulative, would there still have been a requirement to go out and do this face-to-face assessment? Even if it was viewed as, well, I guess I would say even despite the separate instances argument, the other argument is Allison has advantages as a witness that Tansy doesn't. So the lack of personal bias and the fact that unlike Tansy, Em never contradicted her recantation. So when Tansy was on the stand, or sorry, when Em was on the stand, she was asked about her recantation to Tansy and she said she made it up. That never happened with Allison. Your initial time or all your time has expired, but I do have one question. You've not addressed the conviction as to Kay. And we have been discussing the grandmother's possible testimony. But that all goes to Em, as I understand it, and Em's recantation on two occasions. What about Kay? What basis would there be to grant habeas relief to Kay here? Your Honor. Relief is appropriate for both Em and Kay because from the beginning these cases were tied together. The prosecutor did not think this case was strong enough to bring with only Em's allegations. He decided not to prosecute. They were consolidated for trial. At trial, in the opening and closing statement, the prosecutor explicitly tied the two cases together, saying we're not just talking about one, we're talking about two. Em, just like Kay. And finally, at the Ginther hearing, the Ginther evidentiary hearing, on whether there was an effective assistance, counsel said it's not a he said, she said case, it's a he said, they said case. So the prosecution's whole theory was predicated on there being not just one, but two witnesses, and those witnesses reinforcing each other's credibility. So if Allison had been on the stand, she would have undermined Em's credibility, leaving only one undermined witness. And so essentially because there would no longer be this reinforcing aspect, there's a reasonable probability that the jury would have a different result, not only with Em, but also with Kay. Okay. Thank you. Time has expired. We appreciate your argument. Thank you very much. Ms. Moody? Thank you. Ms. Moody? Ms. Moody?  Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody? Ms. Moody?